UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JONATHAN MULLANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 19-11496-PBS |
| PORTFOLIO MEDIA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON
## PLAINTIFF'S MOTION TO REMAND
## AND OTHER MISCELLANEOUS MOTIONS

November 19, 2019

DEIN, U.S.M.J.

## I.  INTRODUCTION

This defamation lawsuit was filed in Massachusetts state court following an online

article discussing an incident that occurred when plaintiff was a law student in Miami, Florida.

Plaintiff Jonathan Mullane, a citizen of Massachusetts, filed his original and first amended

complaints in state court against defendant Portfolio Media, which subsequently removed the

case to federal court under diversity jurisdiction. (Docket No. 1). Shortly after removal, Mullane

filed a new amended complaint naming Aaron Leibowitz, then a citizen of Massachusetts and a

reporter employed by Portfolio, as an additional defendant. (Docket No. 12). Mullane then filed

a motion to remand the suit to state court, citing the new lack of diversity created by the pres-

ence of Leibowitz. (Docket No. 15). For the reasons explained below, this court recommends to

the District Judge to whom this case is assigned that Mullane's motion to remand this case to

state court be DENIED. It also recommends that Mullane's related motion for judicial notice

(Docket No. 52) and Portfolio's motion for leave to supplement record on plaintiff's motion to

remand (Docket No. 53) be ALLOWED, while Mullane's cross-motion to strike defendant's

motion to supplement the record (Docket No. 55) be DENIED.[1]

With respect to other pending matters, this court further recommends that its analysis

of E. Peter Mullane's pending motion to intervene (Docket No. 45) and his motion for leave to

submit supplemental authorities in support of his motion to intervene (Docket No. 56) be

deferred until a ruling by the District Judge on this recommendation that the matter remain in

federal court.  Portfolio has filed a motion to dismiss (Docket No. 27) to which no response is

due until after the remand issue is finally resolved.

## II.  PROCEDURAL HISTORY

The *pro se* plaintiff, Jonathan Mullane, brought this suit against the defendant, Portfolio

Media, Inc. ("Portfolio"), in Suffolk Superior Court on May 30, 2019. (Docket No. 1). Portfolio

owns the online publication Law360.  On June 28, 2019, Mullane filed a "Verified First Amended

Complaint" ("FAC") in state court.[2]  (Id.). Both the original complaint and the FAC named only

Mullane and Portfolio as parties. (FAC ¶¶ 1-2). On July 9, 2019, Portfolio removed the case to

federal court under 28 U.S.C. § 1332(a), citing the complete diversity of citizenship between the

---

[1]  After the hearing on the motion to remand, Mullane sought leave to submit additional authorities
relating to the issue of the liability of original publishers for republications by third parties.  (Docket No.
43, as amended by Docket No. 49).  This court hereby denies plaintiff's motion.  The supplemental
materials were not necessary to decide the remand motion.  To the extent Mullane believes the
referenced law is relevant to the merits of his case, he may include it in his response to the pending
motion to dismiss.

[2]  The FAC is included as Exhibit 3 to Docket No. 1.

two parties. (Docket No. 1; FAC ¶¶ 1-2).  See Lincoln Prop. Co. v. Roche, 546 U.S. 81, 84, 126 S.

Ct. 606, 610, 163 L. Ed. 2d 415 (2005) ("Defendants may remove an action on the basis of

diversity of citizenship if there is complete diversity between all named plaintiffs and all named

defendants, and no defendant is a citizen of the forum State.").  Mullane is a resident of

Massachusetts; Portfolio is a corporation headquartered and incorporated in New York. (Docket

No. 1; FAC ¶¶ 1-2).

   After removal, Mullane filed a "Verified Second Amended Complaint" ("SAC") in federal

court on July 13, 2019, without seeking leave of court. (Docket No. 12). The SAC named Aaron

Leibowitz, a citizen of Massachusetts and a reporter employed by Portfolio for Law360, as an

additional defendant. (SAC ¶¶ 3, 9).  On July 18, 2019, Mullane filed a motion to remand the

suit to Suffolk Superior Court under 28 U.S.C. § 1447(c), citing the lack of diversity and subject-

matter jurisdiction created by the presence of Leibowitz. (Docket No. 15 at 1). On August 1,

2019, Portfolio filed a memorandum and accompanying affidavit opposing both Mullane's

motion to remand and his attempt to amend his complaint by filing the SAC. (Docket Nos. 18,

19). After obtaining leave from the court under Local Rule 7.1(b)(3), Mullane filed a reply in

support of his motion to remand on August 9, 2019. (Docket No. 25). The court heard oral

arguments from Mullane and Portfolio on the motion to remand on September 23, 2019.

(Docket No. 42). On September 25, 2019, Mullane filed a motion for leave to submit supple-

mental authorities in support of his motion to remand. (Docket No. 43). Portfolio filed its

opposition to that motion on October 4, 2019, noting a discrepancy between the text of the

motion and the attached exhibits (Docket Nos. 47, 48); on October 7, Mullane responded with a

notice of errata and a new set of exhibits. (Docket Nos. 49)  In the interim, Mullane's father, E.

Peter Mullane, moved to intervene in this action.[3]  (Docket No. 45).  Portfolio has opposed the

intervention.  (Docket No. 50).  E. Peter Mullane filed a motion for leave to submit supple-

mental authorities (Docket No. 56), and Portfolio opposed that motion (Docket Nos. 63, 64).

On October 15, 2019, Mullane filed a motion for judicial notice regarding Leibowitz's

departure from his employment at Law360 for a new job at the Miami Herald. (Docket No. 52).

On October 18, Portfolio filed a motion for leave to supplement the record with a declaration

from Leibowitz stating that he had relocated to Florida for his job at the Miami Herald. (Docket

No. 53 Ex. A). As a result, Portfolio asserted that Leibowitz is now domiciled in Florida and that

his joinder would no longer destroy diversity jurisdiction. (Id. at 1). Portfolio also indicated the

defendants' willingness to assent if Mullane were to file a new motion for leave to join

Leibowitz in federal court. (Id. at 2). Instead, Mullane responded on October 28, 2019 by filing

an opposition and cross-motion to strike defendants' motion to supplement the record. (Docket

No. 55).  Portfolio then filed a memorandum and affidavit in opposition to Mullane's cross-

motion on November 12, 2019.  (Docket Nos. 61, 62).

Portfolio also filed a motion to dismiss on August 15, 2019, alleging that the SAC fails to

state a claim under Fed. R. Civ. P. 12(b)(6). (Docket Nos. 27-29). Mullane then filed, and the

court granted, a motion to extend his time to reply to the motion to dismiss until fourteen days

after the court's ruling on the motion to remand. (Docket Nos. 31, 36). Accordingly, the motion

to dismiss is not addressed herein.[4]  Similarly, this court will not address the merits of E. Peter

---

[3]  This report will refer to E. Peter Mullane by his full name in all instances. The name "Mullane" is intended to refer only to the plaintiff Jonathan Mullane.

[4]  As detailed below, this court recommends that the SAC be treated as a motion to amend the complaint and that it be denied.  Therefore, the operative pleading will be the FAC.  Since the allegations against

Mullane's motions to intervene and for leave to file supplemental authorities until a final

determination on the motion to remand. (Docket Nos. 44-46, 56).

### III.  STATEMENT OF FACTS

### Background, Law360 Article, and the Leibowitz Tweets

The following facts are derived from the complaints filed by Mullane, which are deemed

to be true for purposes of the motion to remand, and as supplemented in accordance with this

court's rulings on related motions, as described herein.  See Dynamic Image Techs., Inc. v.

United States, 221 F.3d 34, 37-38 (1st Cir. 2000) (when subject matter jurisdiction is at issue,

"the Court . . . may consider extrinsic materials and, to the extent it engages in jurisdictional

factfinding, is free to test the truthfulness of the plaintiff's allegations." (citation omitted)).

In March of 2018, Mullane was a law student at the University of Miami and an intern at

the United States Attorney's Office ("USAO") in Miami. (FAC ¶¶ 8, 35, Ex. A; SAC ¶¶ 10, 37, Ex.

A). He was also the *pro se* plaintiff in a consumer credit suit against Barclays Bank Delaware,

pending in the Southern District of Florida before U.S. District Judge Francisco Moreno.  (FAC

¶¶ 13, 46, Ex. A; SAC ¶¶ 15, 48, Ex. A).  On March 23, 2018, Mullane visited the chambers of

Judge Moreno in an attempt to ask the judge's clerk a question about the Barclays suit.  (FAC

Ex. A; SAC Ex. A).  Mullane contends that he represented to the clerk that he was there in his

capacity as a *pro se* litigant, while Judge Moreno apparently took the position that Mullane

represented himself as an intern at the USAO representing the government.  (FAC ¶¶ 43, 45-46,

Ex. A; SAC ¶¶ 45, 47-48, Ex. A). That incident was followed by a hearing in which Judge Moreno

---

Portfolio are unchanged from the first to the second amended complaint, the motion to dismiss shall be
deemed to apply to the operative complaint.

characterized Mullane's meeting with his clerk as "improper." (FAC Ex. A; SAC Ex. A). Mullane then filed a motion asking Judge Moreno to recuse himself from the pending suit against Barclays.  (Id.).  Judge Moreno recused himself shortly thereafter.  (Id.).

On April 16, 2018, the website Law360, which is owned and operated by defendant Portfolio, published an article entitled "Judge Recuses Self, Scolds Law Student-Plaintiff." (FAC ¶¶ 12, 14, Ex. A; SAC ¶¶ 14, 16, Ex. A).  The article was written by Carolina Bolado, who is not a party to this action.  (FAC Ex. A; SAC Ex. A).  The article reported that Judge Moreno had recused himself from the suit against Barclays, "but not before he took a parting shot" at Mullane. (Id.).  It also described the underlying basis for the recusal as the dispute between Judge Moreno and Mullane over Mullane's visit to the judge's chambers.  (Id.).

According to the article, Judge Moreno's clerk had understood that Mullane was "representing the government" when he "allegedly visited the judge's clerk to inquire about getting a copy of the case record so he could request a writ of mandamus from the Eleventh Circuit." (Id.).  The Law360 article also includes several statements from Mullane, including his description of the judge's accusations against him at the hearing as "farfetched, irrational and patently false." (Id.).

On December 20, 2018, Twitter user (and Portfolio employee) Aaron Leibowitz pub-lished several tweets referencing the dispute between Mullane and Judge Moreno. (FAC Ex. E; SAC Ex. E). The tweets contain a hyperlink to the Law360 article and a brief description of the article's contents.  (Id.).  In the tweets, Leibowitz describes Mullane as a "law student" who "had gone to Moreno's clerk's office (wearing a t-shirt, shorts and flip-flops) to ask for a copy of

his case file" because "[h]e wanted to petition the 11th Circuit appeals court to tell Moreno to speed up work on the case."  (Id.).

On September 27, 2019, a Law360 article reported that Leibowitz was leaving the employ of Law360 in order to "cover local government for the Miami Herald." (Docket No. 52 Ex. B). Leibowitz officially moved from Massachusetts to Florida on October 12, 2019. (Docket No. 53 Ex. A).

### Plaintiff's Claims Regarding Portfolio and the Law360 Article

Except for the addition of Leibowitz as a named defendant, the FAC and SAC are largely identical. In both amended complaints, Mullane brings claims against Portfolio of libel *per se* for publication of the Law360 article (Count I), libel *per se* for the subsequent republication of the defamatory material in the article (Count II), violations of Mass. Gen. Laws ch. 93A § 9 (Counts III and IV), public disclosure of private facts (Count V), tortious interference with prospective economic relations (Count VI), intentional infliction of emotional distress (Count VII), and violations of Mass. Gen. Laws ch. 214 § 1B and Art. XIV of the Massachusetts Declaration of Rights (Count VIII). (FAC at 14-22; SAC at 15-23).

In each complaint, Mullane alleges that the Law360 article "present[ed] all of Judge Moreno's representations as absolute, undisputed facts" while "omit[ting] all of [Mullane's] legal arguments."  (FAC ¶ 32; SAC ¶ 34). He also points to what he calls "false representations and assumptions" in the article, as well as a "pejorative" and "misleading" title. (FAC ¶¶ 16-17; SAC ¶¶ 18-19). To Mullane, these are all indications that Portfolio published the article with "actual malice" and the "malicious intention" of injuring his reputation. (FAC ¶¶ 16-17; SAC ¶¶ 18-19).

In particular, Mullane asserts that the article's statement that he had "wanted to file a petition for a writ of mandamus [in his suit against Barclays] because Judge Moreno had not yet ruled on his motion for default judgment" is factually false, and that the following statement, "[t]he judge pointed out that the bank had filed a motion to dismiss, which tolled any other deadlines and was still pending[,]" implies that Mullane was "incompetent." (FAC ¶¶ 20-21, 25-26; SAC ¶¶ 22-23, 27-28).  He further alleges that the article's representation that Judge Moreno's clerk believed Mullane was representing the USAO when he visited the judge's chambers is both factually false and implies that Mullane had engaged in criminal activity by impersonating a government official. (FAC ¶¶ 43-45, 65-66; SAC ¶¶ 45-47, 68-69). Mullane also takes issue with the article's title and internal summary for omitting his side of the story and insinuating that he acted unethically in visiting the judge's chambers. (FAC ¶¶ 14-17, 39-41; SAC ¶¶ 16-19, 41-43).

In his SAC, Mullane requests mandatory injunctions "permanently barring and enjoining Defendant [Portfolio] from engaging in such unlawful conduct" and "ordering Defendants to remove the subject defamatory article, together with any and all other defamatory representa-tions regarding Plaintiff, from the internet and from their websites." (SAC ¶ 24). He also seeks declaratory relief and damages. (Id.). This is substantially the same as the relief sought in Mullane's first amended complaint.  (FAC ¶ 23).

### Plaintiff's Claims Regarding Leibowitz

Despite the attempted addition of Leibowitz as a defendant, Mullane's claims are the same in his first and second amended complaints.  In the FAC, Mullane sought only to hold Portfolio liable for Leibowitz's publications, while in the SAC Mullane seeks to hold both

Portfolio and Leibowitz liable.  (FAC at 14-22; SAC at 15-23).  Consequently, Portfolio contends that Leibowitz was added as a defendant solely to defeat diversity.  (Docket No. 18 at 1).

Specifically, Mullane alleges in the FAC that after publishing the Law360 article, Portfolio "subsequently *republished* the factually-false representations through reporters in its employ in Boston, Massachusetts." (FAC ¶ 76 (emphasis in original)). The SAC states that Portfolio "subsequently *republished* the factually-false representations through Defendant Leibowitz in Boston, Massachusetts." (SAC ¶ 79). Exhibit E of both complaints is a screenshot of three December 20, 2018 tweets by "Aaron Leibowitz" containing a link to the Law360 article and a brief summary of its contents. (FAC Ex. E; SAC Ex. E).

Count II ("Libel *per se* – Republications") of the FAC characterizes those tweets as a "subsequent republication" of the article's defamatory representations, for which Portfolio is liable under Massachusetts law. (FAC ¶¶ 112, 117). Count II of the FAC also repeats the description of Leibowitz as "a reporter in the employ of Defendant [Portfolio]" and argues that "[Portfolio] is jointly and severally liable for all . . . subsequent republications." (FAC ¶¶ 117, 122). In the SAC, Count II was amended by Mullane to add Leibowitz as a defendant and to state that "Defendant Leibowitz—a reporter in the employ of Defendant Portfolio Media—republished the defamatory representations." (FAC ¶ 117; SAC ¶ 120). Mullane now alleges in the SAC that both "[d]efendants are jointly and severally liable for all of the subsequent republications made by Defendant Leibowitz." (SAC ¶ 125).

Mullane also added Leibowitz as a defendant to his claims for public disclosure of private facts (Count V), tortious interference with prospective economic relations (Count VI), intentional infliction of emotional distress (Count VII), and violations of Mass. Gen. Laws ch. 214

§ 1B and Art. XIV of the Massachusetts Declaration of Rights (Count VIII). (SAC at 20-24). While the language of those claims was updated in the SAC to reflect the presence of multiple defendants, no additional specific allegations against Leibowitz were added, and the contents of the claims are substantially identical between the two amended complaints. (E.g., FAC ¶ 146; SAC ¶ 150). Leibowitz was not added as a defendant to Mullane's claims against Portfolio for "libel *per se*" for the original article (Count I) or for violations of Mass. Gen. Laws ch. 93A § 9 (Counts III and IV). (SAC at 15-16, 18-19).

Further facts will be provided below as appropriate.

## IV. ANALYSIS

The crux of Mullane's motion to remand is his argument that the federal court lacks subject matter jurisdiction over his suit. (See Docket No. 15). Specifically, he contends that the presence of Leibowitz, a citizen of Massachusetts, destroys the complete diversity of citizenship that allowed Portfolio to remove the case to federal court. (Id. at 1-2).  However, Mullane also challenges the existence of diversity jurisdiction under the FAC at the time of removal, when Portfolio was the only defendant. (Id. at 4). As a finding that diversity jurisdiction did not exist at the time of removal would end the inquiry, the analysis will begin there.

### A.   FAC - Diversity Jurisdiction Analysis

Although it is not his main argument, Mullane does contend that diversity jurisdiction did not exist under the FAC when this case was removed to federal court. (Id.).  It is established law that the existence of federal diversity jurisdiction "depends on the citizenship of the parties at the time suit is filed." Dole Food Co. v. Patrickson, 538 U.S. 468, 478, 123 S. Ct. 1655, 1662, 155 L. Ed. 2d 643 (2003) (citations omitted).  While Portfolio was the only named defendant in

both the original complaint and the FAC filed in state court, Mullane contends that Leibowitz's "republication" in his capacity both as an employee of Portfolio and individually forms a basis of this litigation, and that Leibowitz is therefore a "real party of interest" or an "indispensable party" to the litigation.  (See Docket No. 15 at 4).  Therefore, according to Mullane, Leibowitz's existence defeated diversity at the time suit was filed.[5]  This court disagrees.

As an initial matter, Mullane's "real party of interest" language evokes the principle that courts must "look to the real parties to the controversy" when determining if diversity jurisdiction exists. Lewis v. Clarke, 137 S. Ct. 1285, 1294, 197 L. Ed. 2d 631 (2017) (citation omitted). However, courts use this principle to eliminate "nominal or formal" parties from the diversity analysis, not to seek out unnamed parties. See, e.g., Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61, 100 S. Ct. 1779, 1781-82, 64 L. Ed. 2d 425 (1980).  Similarly, Fed. R. Civ. P. 17(a), which addresses the "real party in interest" in litigation does not assist Mullane here.  That Rule requires that actions "shall be *prosecuted* in the name of the real party in interest" — it does not authorize the addition of defendants.  See Roche, 546 U.S. at 90, 126 S. Ct. at 614 (emphasis in original).

Mullane's characterization of Leibowitz as an "indispensable party" is also unavailing. Fed. R. Civ. P. 19 "provides for the joinder of parties who should or must take part in the litigation to achieve a just adjudication."  Roche, 546 U.S. at 90, 126 S. Ct. at 614 (internal punctuation and citation omitted).  Rule 19 also provides for the "dismissal of suits when

---

[5]  Since Mullane's initial filings in Massachusetts state court indicate that he sought $19,500,000 in damages, the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332(a) is not at issue.  (Docket No. 17 at 31).

joinder of a required party is not feasible and that party is indispensable." Baccadi Int'l Ltd. v. V. Suarez & Co., 719 F.3d 1, 9 (1st Cir. 2013) (citing Fed. R. Civ. P. 19(b)).  It does not create or defeat jurisdiction itself.  See Roche, 546 U.S. at 90, 126 S. Ct. at 613-14 (citing Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts . . . .")).  In the instant case, Leibowitz is not needed for Mullane to obtain full monetary compensation for any harm caused by the republication, if he prevails.  Similarly, he can obtain complete injunctive relief with respect to any publications, or republications, Portfolio controls.  Any additional relief from Leibowitz to which Mullane contends he is entitled, would not be dependent on Portfolio, and could be obtained from separate litigation against Leibowitz.  See Bacardi, 719 F.3d at 10 ("[E]xisting parties can resolve their dispute and obtain complete relief as to each other without absent party's presence although a dispute with absent party may be left unresolved." (citing with approval MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 385 (2d Cir. 2006))). Leibowitz is not needed for Mullane "to achieve a just adjudication" in the instant litigation.  See Roche, 546 U.S. at 90-91, 126 S. Ct. at 614 (when "diverse corporate defendant accepted full liability for any eventual adverse judgment[,] nondiverse subsidiary need not be joined as a defendant, although arguably it had joint liability with its parent." (citing with approval Simpson v. Wash. Ins. Group, 608 F.2d 1171, 1174 (9th Cir. 1979))); Temple v. Synthes Corp., Ltd., 498 U.S. 5, 6, 111 S. Ct. 315, 316, 112 L. Ed. 2d 263 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit . . . . Nothing in the 1996 revision of Rule 19 changed that principle."); Bacardi, 719 F. 3d at 9-11 (parties must be "required" to be joined under Rule 19(a) in order to be "indispensable" under Rule 19(b); absent party not "required" under Rule 19(a) when complete relief could be

afforded among "*those already parties*" and absent party has "virtually identical interests" as a current party).  Mullane has not asserted any facts to support a conclusion that Leibowitz is a required or indispensable party, and this court cannot envision any.

Finally, Mullane seems to argue that because Leibowitz was "a reporter in the employ of Defendant Portfolio Media" and was a resident of Massachusetts when suit was filed, that somehow diversity jurisdiction did not exist even when Portfolio was the only named defendant.  (See Docket No. 15 at 5).  This argument is also without merit.  For the purposes of diversity, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). "The jurisdictional rule governing here is unambiguous and it is not amenable to judicial enlargement." Roche, 546 U.S. at 94, 126 S. Ct. at 616.

For these reasons, there was diversity jurisdiction under the FAC at the time the action was removed.  Therefore, the issue to be addressed is whether Leibowitz is, or should be, properly added as a new defendant whose presence defeats diversity jurisdiction.

**B.** **Analysis Under Fed. R. Civ. P. 15**

**1.** **Rule 15(a)(1) – Amendment as a Matter of Course**

Mullane asserts that under Rule 15(a)(1), he was able to file the SAC without leave of court, as it represents the only amended pleading he has filed in federal court. Fed. R. Civ. P. (15)(a)(1).  (Docket No. 15 at 6). Thus, he argues, since his amended complaint does not meet the requirements for diversity jurisdiction, his motion to remand should be allowed.  (Docket No. 15 at 4).  For its part, Portfolio contends that Mullane exhausted his single opportunity to amend his complaint without leave under Rule 15(a)(1) when he filed the FAC in state court.

[13]

(Docket No. 18 at 6-7). Because Mullane did not seek the necessary leave from the federal court before filing the SAC adding Leibowitz, Portfolio concludes that the SAC must be disregarded as a "nullity" and Mullane's motion to remand denied. (Id. at 9).  For the reasons detailed herein, this court concludes that Mullane was not entitled to amend his complaint for a second time without leave of court.  Nevertheless, Mullane's SAC should be considered a motion for leave to amend his complaint and should be evaluated accordingly.

Mullane contends that he was entitled to file the SAC in federal court without first seeking leave of court pursuant to Fed. R. Civ. P. 15(a)(1)(A), which allows a party to "amend its pleading once as a matter of course within . . . 21 days after serving it," since he had not previously filed an amended complaint in federal court, and the Federal Rules of Civil Procedure did not govern the Massachusetts state court action.  (Docket No. 15 at 6).[6]  In support, he cites to cases he describes as examples of similar procedural situations, such as Quality Labels & Packaging, Inc. v. Wells Fargo Bank, N.A., No. 1:19CV210, 2019 WL 2992219, at *2 (M.D.N.C. July 9, 2019) ("Plaintiffs filed a second amended complaint as a matter of course under Fed. R. Civ. P. 15(a)(1)(B) [after removal].").  Mullane goes on to attack what he describes as Portfolio's stance that the court should "take into account all events that previously occurred" before removal, arguing this would mean that Portfolio defaulted by failing to file a timely answer to the FAC.[7] (Docket No. 15 at 6).  Not only are the cases cited by Mullane inapplicable to the

---

[6]  This court notes that a comparable rule governing amendments is found at Mass. R. Civ. P. 15(a)(1)(A) ("A party may amend his pleading once as a matter of course at any time before a responsive pleading is served and prior to entry of an order of dismissal....").

[7]  As Portfolio points out, Mullane's argument omits the fact that this court granted Portfolio's assented-to motion to extend their time to respond to the FAC until August 15, 2019; shortly after that motion was granted, Mullane filed the SAC, to which Portfolio objected in a timely manner. (Docket Nos. 7, 10,

instant dispute,[8] but Portfolio's contention that Mullane's filings in state court are appropriately considered by the federal court is persuasive.

Although the First Circuit does not appear to have directly addressed the issue, the majority of the relevant federal case law supports Portfolio's position that a previous amendment without leave in state court qualifies as the single amendment without leave of court allowed under Rule 15. See Gibson v. N.Y. State Office of Mental Health, No. 6-17-CV-0608(GTS/TWD), 2018 WL 3850632, at *7 n.7 (N.D.N.Y. Aug. 13, 2018) (stating plaintiff "lacks the right to amend her operative pleading 'as a matter of right' pursuant to Fed. R. Civ. P. 15(a)(1) because . . . [it] was already amended in state court" and citing multiple cases in support). This accords with the general principle that proceedings in state court "have force and effect in federal court" after removal. Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 435-36, 94 S. Ct. 1113, 1122, 39 L. Ed. 2d 435 (1974) ("[P]leadings filed in state court, for example, need not be duplicated in federal court").  Most importantly, most courts agree that "plaintiffs cannot destroy diversity through amendment as a matter of right." N.E. Bridge Contractors, Inc. v. Aspen Aerials, Inc., 363 F. Supp. 3d 217, 218 (D. Mass. 2019) (citations

---

12). In any event, Mullane does not substantively assert that Portfolio is, in fact, in default for failure to file a timely responsive pleading, and the record would not support a finding of default.

[8] This court does not find Quality Labels, or the other cases that Mullane cites for his ability to file the SAC without leave, particularly relevant or persuasive to the instant case.  For example, while the court in Quality Labels states that plaintiff filed a second amended complaint "as a matter of course under Fed. R. Civ. P. 15(a)(1)(B)" after removal that "automatically supersede[d]" the first amended complaint, those statements came in the context of finding that defendant's Rule 12(b) motion to dismiss the first amended complaint was now moot. 2019 WL 2992219 at *2. Those statements did not apply to the court's analysis of plaintiff's motion to remand, which only examined the first amended complaint, which had been filed in state court. Id. at *2-4 ("Plaintiffs' subsequent amendments have no bearing on the removal inquiry[.]").  The other cases cited by Mullane are also easily distinguishable and do not alter this court's analysis.

omitted); <u>see also</u> <u>Kauders v. Uber Techs., Inc.</u>, No. CV 16-11659-FDS, 2017 WL 1652551, at *3 n.2 (D. Mass. May 1, 2017) (allowing joinder of non-diverse defendants as of right under Rule 15(a) would give plaintiffs the ability to "routinely destroy diversity jurisdiction shortly after removal.").  Instead, "courts have concluded that when a plaintiff adds a non-diverse defendant following removal, § 1447(e) applies even if the amendment would otherwise be permissible as a matter of course under Rule 15(a)(1)."  <u>Kauders</u>, 2017 WL 1652551, at *3 (citations omitted). Therefore, this court, faced with the plaintiff's post-removal joinder of a non-diverse defendant, "may deny joinder, or permit joinder and remand the action," even if the SAC was filed as a matter of right.  28 U.S.C. § 1447(e).

### 2.    <u>The Issue of Remand Remains to be Decided</u>

Portfolio contends that since Mullane failed to file a motion to amend, the SAC should be deemed a "nullity," leaving no issue concerning remand to be decided by this court.  (Docket No. 18 at 9).  However, even though Mullane did not seek prior court approval, this court recommends that his filing of the SAC should be deemed to be a motion to amend.  Therefore, the issue of whether remand is necessary due to a lack of diversity remains to be decided by the court.

The First Circuit has recognized that requests for leave to amend can be informal. <u>E.g.,</u> <u>United States ex rel. D'Agostino v. EV3, Inc.</u>, 802 F.3d 188, 194 (1st Cir. 2015) ("[T]he court construed the . . . filing as an implicit request for leave to amend. We defer to this reasonable construction." (citation omitted)); <u>Invest Almaz v. Temple-Inland Forest Prod. Corp.</u>, 243 F.3d 57, 71 (1st Cir. 2001) (finding that party's indication "at [a] hearing that it wished to amend the pleadings if the magistrate judge thought it necessary" was a request for leave to amend).  <u>See</u>

also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). In his motion to remand, Mullane requests that the court grant him leave to amend his complaint if it finds he could not submit the SAC as a matter of course. (Docket No. 15 at 8). His *pro se* status is also relevant, as "courts [should] endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." Rodi v. S.N.E. Sch. Of Law, 389 F.3d 5, 20 (1st Cir. 2004) (quoting Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)). Accepting Mullane's SAC as an implicit request for leave to amend if necessary accords with "the overall liberal amendment policy of Rule 15(a) and the general desirability of minimizing needless formalities." 6 Wright & Miller, Federal Practice and Procedure § 1484 (3d ed.); see also Juarez v. U.S. Bank Nat'l Ass'n, No. 11-10318-DJC, 2014 WL 815343, at *2 (D. Mass. Mar. 1, 2014) ("Courts grant *pro se* litigants wide latitude in amending their complaints." (citing Alexander v. Jeffries, No. 93–15830, 1993 WL 503234, at *1 (9th Cir. Dec. 8, 1993))). It would also ensure that the merits of the dispute are addressed by the court.

Finally, Portfolio contends that Leibowitz's move to Florida basically moots the issue raised by the motion to remand since he can now be added as a defendant without defeating diversity. (See Docket No. 53 at 2). According to Portfolio, all Mullane needs to do is file a new motion "for leave to join Mr. Leibowitz as a defendant," because the defendants "are prepared to assent" to that motion. (Id. at 2). By responding with a cross-motion to strike the defendants' motion to supplement the record with Leibowitz's affidavit, Mullane has evidently declined Portfolio's invitation, at least at this juncture. (See Docket No. 55).

While, as discussed below, Mullane may subsequently move to add Leibowitz as a defendant if the case is not remanded,[9] Leibowitz's move to Florida after Mullane filed the SAC did not create diversity if it did not exist at the time the SAC was filed.  In this court's view, the appropriate date to assess diversity is the date the "motion to amend" was filed (in this case the date the SAC was filed), and not the date the court rules on the motion.  Such an analysis would be consistent with the "time-of-filing rule" that "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing [of the suit] – whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571, 124 S. Ct. 1920, 1924, 158 L. Ed. 2d 866 (2004).  A change in the citizenship of a continuing party during the pendency of a case cannot create diversity where none existed at the time suit was filed.  Id. at 574-75, 124 S. Ct. at 1926.  For the same reason, this court concludes that the current analysis as to whether diversity jurisdiction survives the addition of Leibowitz through the SAC should look to the date the issue of joinder was presented to the court in connection with the motion to remand, and not on the fortuitous date when Leibowitz moved, or the court decides the motion.  As previously discussed, any subsequent motions to amend the complaint to join Leibowitz as a defendant would therefore look to the existence of diversity jurisdiction at the time the new motion to amend is filed.  Since Leibowitz was a citizen of Massachusetts at the time the SAC was filed, this court must now determine if Leibowitz

---

[9]  Under a new motion to amend, diversity would be considered at the time the new motion was filed. See In re iBasis, Inc. Derivative Litig., 551 F. Supp. 2d 122, 125 (D. Mass. 2008) ("[W]hen an amended pleading ... [supersedes] the original complaint, jurisdiction is determined based on the amended pleading.").

should be added as a non-diverse defendant.  For the reasons detailed below, this court

concludes that he should not be joined as a defendant to defeat diversity.

### C.      Analysis Under 28 U.S.C. § 1447(e)

#### 1.      Standard of Review

28 U.S.C. § 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional

defendants whose joinder would destroy subject matter jurisdiction, the court may deny

joinder, or permit joinder and remand the action to the State court."  Mullane argues that

Portfolio bears the burden of proof on the question of remand, relying on various cases that

address the propriety of removing a case from state court.  (See Docket No. 15 at 3, 5).  For the

reasons detailed above, however, Portfolio properly removed the FAC to federal court, as there

was complete diversity at the time of removal.  Mullane also argues that this court should

evaluate the case as one involving a fraudulent joinder, which would place a "heavy" burden of

proof on Portfolio.  (Id. at 5).  Again, however, the doctrine of fraudulent joinder properly

belongs to an assessment of the propriety of removal, as it allows federal courts to "assume

jurisdiction over a case—notwithstanding the non-diverse defendant—then dismiss the non-

diverse defendant and retain jurisdiction." Kauders, 2017 WL 1652551, at *2 (citing Mayes v.

Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)). The fraudulent joinder analysis does not apply

when courts consider joining a non-diverse defendant after removal has already occurred.  Id.

("[Fraudulent joinder] is generally not necessary after removal, because the district court,

which already possesses jurisdiction, can simply decline to permit joinder of non-diverse defen-

dants [under § 1447(e)]." (citing Mayes, 198 F.3d at 463; 28 U.S.C. § 1447(e))).

[19]

To the limited extent that federal courts have understood § 1447(e) as imposing a burden of proof, they have placed it on the plaintiff as the party seeking joinder. Ebersohl v. Bechtel Corp., No. CIV.09-1029-GPM, 2010 WL 2164451, at *4 (S.D. Ill. May 31, 2010), modified on other grounds, No. CIV.09-1029-GPM, 2010 WL 2220590 (S.D. Ill. June 3, 2010) ("[Plaintiff] will have the burden of proving by a preponderance of the evidence that the joinder of [non-diverse defendant] is proper under 28 U.S.C. § 1447(e)."); Sussman v. Capital One, N.A., Civ. A. No. 13-6483 FLW, 2015 WL 164095, at *3 n.1 (D.N.J. Jan. 13, 2015) (stating that "the Court is unable to find[] any case law to suggest that the removing party bears the burden of proof to convince the Court to deny joinder under Section 1447(e)" and citing to Ebersohl for "the opposite" proposition).  Most decisions, however, simply speak in terms of the court exercising its discretion to obtain an "equitable" result.  See Irizarry v. Marine Powers Int'l., 153 F.R.D. 12, 14 (D.P.R. 1994) ("Virtually every court . . . has unanimously agreed that [§ 1447(e)] compels a court to focus on whether joinder would be 'equitable' instead of being based on whether a party is indispensable." (citations omitted)); see also N.E. Bridge Contractors, 363 F. Supp. 3d at 219 ("Although the First Circuit has not addressed the precise issue of Rule 15 amendments post-removal, both the Fourth and Fifth Circuits found that such joinder is to be determined by the sound discretion of the district court and does not require a strict Fed. R. Civ. P. 19(b) analysis for dispensability." (citations omitted)).

With the "permissive" language of § 1447(e), "Congress granted the courts broad discretionary power to permit or deny joinder."  Kelley v. Vt. Mut. Ins. Co., 407 F. Supp. 2d 301, 305 (D. Mass. 2005).  The discretionary decision requires a fact-specific analysis of the proposed joinder, which the court "should scrutinize . . . more closely than an ordinary amendment."  Id.

at 305 (quoting <u>Hensgens v. Deere & Co.</u>, 833 F.2d 1179, 1182 (5th Cir. 1987)). In practice, this involves examining "a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits." <u>Hensgens</u>, 833 F.2d at 1182. These factors have been described as follows:

> the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment should be permitted.

<u>Id.</u>, <u>cited with approval in</u> <u>Casas Office Mach., Inc. v. Mita Copystar Am., Inc.</u>, 42 F.3d 668, 675 n.8 (1st Cir. 1994).

Applying these criteria, this court recommends that Leibowitz not be joined as a defendant and that the motion to remand be denied.

### 2.   Consideration of the § 1447(e) Factors

#### a.   Is the Purpose of the Amendment to Defeat Federal Jurisdiction?

In evaluating the equitable factor of whether the purpose of the amendment was to defeat federal jurisdiction, courts "may consider the extent to which such a motivation is evinced through the circumstances of the case." <u>Kelley</u>, 407 F. Supp. 2d at 306 (citations omitted). Courts have warned that motions to join non-diverse defendants, when filed promptly after removal and with little intervening discovery, may represent "tactical maneuvers" rather than substantive amendments based on newly discovered facts. <u>Gum v. Gen. Elec. Co.</u>, 5 F. Supp. 2d 412, 414-15 (S.D.W. Va. 1998); <u>see also</u> <u>Mayes</u>, 198 F.3d at 463 ("Especially where, as here, a plaintiff seeks to add a nondiverse defendant immediately after removal but before

any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction."). Here, Portfolio points to the accelerated timeline of Mullane's amendment and motion as evidence of his "tactical design" to achieve remand. (Docket No. 18 at 14-15).

The procedural circumstances of this case do invite scrutiny. Mullane filed the SAC on July 13, 2019, which is less than a week after Portfolio's notice of removal on July 9, 2019 and about two weeks after the FAC was filed in state court. (Docket Nos. 1, 12). The motion to remand followed on July 18, 2019. (Docket No. 15).  In response to an inquiry from this court at the September 23, 2019 hearing, Mullane asserted for the first time that he added Leibowitz as a defendant because he learned that the tweets had been posted to Leibowitz's personal Twitter account rather than to an account controlled by Portfolio.  (Docket No. 57 at 3). Mullane also contended that the court would be unable to provide complete relief without Leibowitz because Portfolio has neither the ability nor the authority to remove Leibowitz's tweets from the internet.  (Id. at 20-21).  These arguments are not sufficient to add Leibowitz as a defendant or to warrant a remand to state court.

As an initial matter, neither the SAC nor the motion to remand state that the addition of Leibowitz was motivated by the discovery of new information after the FAC was filed.  (Docket Nos. 12, 15). Apart from specifically identifying him by name, the substantive allegations against Leibowitz in the SAC are identical to the corresponding paragraphs in the FAC, and Leibowitz's identity, as well as the platform for his alleged "republication," were known when the original complaint, as well as the FAC, were filed in state court. (E.g., FAC ¶ 117; SAC ¶ 120). Both the FAC and the SAC also include essentially the same screenshot of Leibowitz's tweets,

which display his full name. (FAC Ex. E; SAC Ex. E). Whatever new information about Leibowitz's account Mullane may have gained within the short window between the FAC and the SAC, there is no indication that the information was unavailable at the time of the FAC.

Similarly, to the extent that removing all manifestations of the Law360 article from the internet has always been one of Mullane's goals in this suit, he apparently believed at the time suit was commenced that naming Portfolio alone was sufficient.  The FAC requested an injunction ordering Portfolio to remove the article, "together with any and all other defamatory representations regarding Plaintiff, from the internet." (FAC at 23). It also specifically references Leibowitz's tweets as a "republication" of the "defamatory representations" in the Law360 article by an employee of Portfolio. (FAC ¶ 117, Ex. E).  Portfolio informed the court that if it was ordered to take the article off the internet (which it adamantly contends would be inappropriate), Leibowitz's "link" would not disclose the article.  (Docket No. 57 at 14).  There is no evidence that Mullane learned anything after the FAC was filed which required him to add Leibowitz to obtain the relief he originally sought from Portfolio.

In sum, in the absence of any contemporaneous explanation as to why Mullane belatedly came to believe that Leibowitz needed to be named a defendant, the rapid sequence of events after removal indicated a desire to destroy diversity jurisdiction.  See McGee v. State Farm Mut. Auto. Ins. Co., 684 F. Supp. 2d 258, 263-65 (E.D.N.Y. 2009) ("Absent . . . any explanation by [plaintiff] for why the added parties were not named when he could easily have done so at the outset when filing his action in the state court," the court "conclude[s] that [plaintiff] had no independent reason for joining the additional defendants apart from . . .

forum shopping.").  Thus, the first factor weighs against allowing joinder of Leibowitz as a

defendant.

### b.   Has the Plaintiff Been Dilatory in Asking for the Amendment?

In applying the factor of whether the plaintiff has been dilatory in seeking the amend-

ment, courts have held that "[t]he only delay that is relevant to joinder considerations . . . is

that between the removal of the case and the plaintiff's motion for joinder and remand," not

the period between any previous complaints and the attempt at joinder. Kelley, 407 F. Supp. 2d

at 308 (citations omitted).  Here, there has been no significant delay after the case was

removed; the SAC was filed four days after removal, approximately two weeks after the FAC,

and less than six weeks after the original complaint. (Docket Nos. 1, 12). The motion to remand

was then filed five days after the SAC. (Docket Nos. 12, 15). See also McGee, 684 F. Supp. 2d at

263 (amended complaint was filed "little more than two weeks after the case's removal and

before any substantive filings by [defendant]. This cannot be regarded as a significant delay.").

As the analysis of the previous factor indicates, however, Mullane's expedited timeline is

something of a double-edged sword as it indicates that the addition of Leibowitz was simply to

defeat diversity. See Drelick v. Innovative Dev. Co.. LLC, No. 08-CV-112-JL, 2008 WL 2486040, at

*4 (D.N.H. June 13, 2008) (stating that a rapidly filed amendment "cuts both ways" when

analyzing motive of proposed joinder after removal and citing to examples). With that caveat,

the second factor does not weigh either for or against allowing joinder.

### c.   Will the Plaintiff Be Significantly Injured If the Amendment is Not Allowed?

In determining whether the plaintiff will be significantly injured if the amendment is not allowed, courts have examined "whether a plaintiff can be afforded complete relief in the absence of the amendment." Jerido v. Am. Gen. Life & Acc. Ins. Co., 127 F. Supp. 2d 1322, 1325 (M.D. Ala. 2001). They have also considered "the extent of the possible danger posed by concurrent litigation in federal and state court to the plaintiff if the amendment is not allowed." Kelley, 407 F. Supp. 2d at 308 (citations omitted).  Under the rather unique sequence of events here, Mullane will not be injured at all if the amendment is not allowed.

Mullane does not dispute that any monetary relief he is seeking can be satisfied by Portfolio, and that Portfolio could be ordered to remove the article, thereby providing him with virtually all of the injunctive relief he is seeking.  Mullane did contend at the oral argument that there may be "other text" under Leibowitz's exclusive control that an order against Portfolio would not affect.  (Docket No. 57 at 20).  As an initial matter, as previously discussed, an "unresolved dispute" with an absent party does not make that party necessary to the original action.  Bacardi, 719 F.3d at 10.  In any event, assuming, arguendo, that Mullane's concerns are warranted despite the lack of any specific allegations about the defamatory nature of Leibowitz's text, Mullane is likely to be able to eliminate that problem by seeking leave to add Leibowitz in an amended complaint at this time.  Portfolio has already agreed to such an amendment and since Leibowitz is now a Florida resident, his addition to the litigation in a new pleading would not defeat diversity.  Therefore, assuming this court has personal jurisdiction over Leibowitz, Mullane can avoid any potential harm that might arise if he were obligated to sue Leibowitz separately.

d.      **Any Other Factors Bearing on the Equities**

Beyond the factors already discussed, the court can consider "any other factors bearing on the equities" of the decision on joinder. Kelley, 407 F. Supp. 2d at 306 (quoting Hensgens, 833 F.2d at 1182).  In the instant case, Mullane has other pending litigation in this federal court against Breaking Media, Inc. and Elie Mystal, Civil Action No. 18-12618-PBS, which challenges the publication of another article regarding the underlying incident with Judge Moreno.  It would be most efficient if the same court addressed the same issues, even if it occurs in two pieces of litigation.  Therefore, this factor also weighs in favor of denying joinder.

In conclusion, after careful consideration, this court finds that the equitable analysis weighs in favor of disallowing joinder and denying remand under 28 U.S.C. § 1447(e).

D.      **Disposition of Other Motions**

Mullane filed a motion asking the court to take judicial notice that Leibowitz left his job at Law360 for a position with the Miami Herald (Docket No. 52) and Portfolio filed a motion for leave to supplement the record by adding information about Leibowitz's move to Florida (Docket No. 53).  Mullane filed a cross-motion to strike defendants' motion to supplement the record (Docket No. 55).  Since the fact that Leibowitz moved to Florida is a significant fact relied on and addressed by both parties, this court recommends that the motions to add this information to the record (Docket Nos. 52 & 53) be ALLOWED, and Mullane's motion to strike Portfolio's filing (Docket No. 55) be DENIED. This court further recommends that its analysis of E. Peter Mullane's pending motion to intervene (Docket No. 45) and his motion for leave to submit supplemental authorities in support of his motion to intervene (Docket No. 56) be

deferred until a ruling by the District Judge on this recommendation that the matter remain in federal court.

## V.  CONCLUSION

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Mullane's motion to remand this case to state court (Docket No. 15) be DENIED. It also recommends that Mullane's related motion for judicial notice (Docket No. 52) and Portfolio's motion for leave to supplement record on plaintiff's motion to remand (Docket No. 53) be ALLOWED, and Mullane's motion to strike Portfolio's filing (Docket No. 55) be DENIED.[10] This court further recommends that its analysis of E. Peter Mullane's pending motion to intervene (Docket No. 45) and his motion for leave to submit supplemental authorities in support of his motion to intervene (Docket No. 56) be deferred until a ruling by the District Judge on this recommendation that the matter remain in federal court. [11]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[10]  This court further denies plaintiff's motion for leave to submit supplemental authorities (Docket No. 43, as amended by Docket No. 49).  To the extent Mullane believes the referenced law is relevant, he may include it in his response to the motion to dismiss.

[11] The parties are hereby advised that under the provisions of Fed. R. Civ. P.72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days after being served with this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985); accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).