UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JONATHAN MULLANE, | ) | |
|                    Plaintiff, | ) | |
|   and | ) | |
| | ) | |
| E. PETER MULLANE, | ) | |
|   Proposed Plaintiff-Intervenor, | ) | |
| | ) | |
|             v. | ) | CIVIL ACTION |
| | ) | NO. 19-11496-PBS |
| PORTFOLIO MEDIA, INC., | ) | |
|                    Defendant. | ) | |

REPORT AND RECOMMENDATION ON
PROPOSED PLAINTIFF-INTERVENOR'S MOTION TO INTERVENE

February 28, 2020

DEIN, U.S.M.J.

I. **INTRODUCTION**

E. Peter Mullane (the "plaintiff-intervenor") seeks to intervene in an action brought by his son, Jonathan Mullane (the "plaintiff"), against Portfolio Media (the "defendant") alleging defamation and seven derivative claims. The defamation action arises from an article published by the defendant describing events surrounding a confrontation between the plaintiff and United States District Judge Federico Moreno. The plaintiff-intervenor argues he has suffered as a result of the article's publication and seeks to assert both loss of consortium and tortious interference with contractual relations claims.

Presently before the court is the "Proposed Plaintiff-Intervenor's Motion to Intervene." (Docket No. 45). The proposed plaintiff-intervenor seeks to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a) or, alternatively, under Fed. R. Civ. P. 24(b). (Docket No. 46 at 1,

10). Under Rule 24(a), the plaintiff-intervenor argues he has met his burden of showing he is entitled to intervene as a matter of right because his timely motion is necessary to ensure that his interests are protected, and his interests are not otherwise adequately represented. Alternately, he contends that the court should exercise its discretion and permit his intervention under Rule 24(b) because, in addition to his arguments under Rule 24(a), his intervention will not delay the proceedings or prejudice the parties. The defendant argues the plaintiff-intervenor cannot meet the requirements of Rule 24(a) because the motion is futile, untimely, contingent on the plaintiff's underlying suit, and the plaintiff-intervenor's interest is adequately represented by the plaintiff. The defendant further contends that the court should not otherwise exercise its discretion under Rule 24(b) because the plaintiff-intervenor's motion is untimely and will unnecessarily complicate the case.

As detailed below, this court finds that the plaintiff-intervenor fails to satisfy the requirements of intervention as a matter of right and otherwise recommends that the court decline to permit intervention. Accordingly, this court recommends to the District Judge to whom this case is assigned that the "Proposed Plaintiff-Intervenor's Motion to Intervene" (Docket No. 45) be **DENIED**.

## II.    FACTS AND PROCEDURAL HISTORY

### Plaintiff's Underlying Action

Around May 30, 2019, the plaintiff commenced the currently pending action against the defendant alleging defamation and several related claims stemming from an article the defendant published that described events involving the plaintiff. (Docket Nos. 1-3, 1-4). On April 16, 2018, the defendant had published an article titled "Judge Recuses Self, Scolds Law

Student-Plaintiff."  (Docket No. 1-3 Ex. A).  At the time the article was published, the plaintiff was a second-year law student at the University of Miami School of Law, an intern at the United States Attorney's Office, and the plaintiff in a "common $1,600 consumer credit dispute" that was pending before Judge Moreno in the Southern District of Florida.  (See Docket No. 1-3 at ¶¶ 13, 15, 22, 28, 35, 51; id. Ex. A).

The article describes a hearing held before Judge Moreno and Judge Moreno's recusal from the plaintiff's case.  (Id. Ex. A).  The plaintiff had been summoned to a hearing before Judge Moreno as the result of the plaintiff's visit to Judge Moreno's chambers.  (See id.).  At the hearing, Judge Moreno confronted the plaintiff about the purpose of his visit and whether he had gained access to the chambers because he represented to the clerk that he worked for the U.S. Attorney's Office.  (Id.).  Following the contentious hearing, Judge Moreno recused himself from the case.  (Id.).  The plaintiff disputes Judge Moreno's characterization of what happened in chambers and the defendant's subsequent description of the hearing and recusal.  (See generally Docket No. 1-3).  The plaintiff bases his defamation and related claims on the article's title and several statements from the article that he alleges are inaccurate.  (See id. at ¶¶ 14-91).

### Plaintiff-Intervenor's Proposed Complaint

On September 30, 2019, the plaintiff-intervenor, the father of the plaintiff, filed his Motion to Intervene.  (Docket No. 45; Docket No. 45-1 at ¶ 36).[1]  In his proposed complaint, the

---

[1] The plaintiff-intervenor's proposed complaint adds Aaron Liebowitz as a defendant. (Docket No. 45-1 at 1).  The plaintiff had previously proposed to add Mr. Liebowitz, and had moved to remand the case to state court, as his addition would have defeated diversity jurisdiction.  The plaintiff's motion was denied. (Docket No. 74).  To the extent that the plaintiff-intervenor is seeking to add Mr. Liebowitz as a defendant, his request should be denied for the same reasons.

plaintiff-intervenor describes the defendant's actions in publishing and sharing the article in question as a "deliberate and intentional course of conduct to harm the [p]laintiff and his family" by showing the plaintiff in "a negative and derogatory manner, and in the context of the recitation of facts noted therein that are not accurate."  (Docket No. 45-1 at ¶¶ 10, 105).

The portions of the plaintiff-intervenor's complaint arguing why the article is defamatory essentially parrot the plaintiff's complaint.  (Compare Docket No. 1-3 at ¶¶ 14-22 with Docket No. 45-1 at ¶¶ 105-114; compare Docket No. 1-3 at ¶¶ 24-51 with Docket No. 45-1 at ¶¶ 118-145; compare Docket No. 1-3 at ¶¶ 52-54 with Docket No. 45-1 at ¶¶ 147-149).[2]  The plaintiff-intervenor also asserts that the defendant did not, and is still not, abiding by the Society of Professional Journalists Code of Ethics.  (Docket No. 45-1 at ¶¶ 179-181).

The plaintiff-intervenor's proposed complaint alleges two counts.  (Id. at ¶¶ 194-211). In Count I, the plaintiff-intervenor brings a claim for loss of consortium under Mass. Gen. Laws ch. 231, § 85X.  (Id. at ¶¶ 194-201).  The plaintiff-intervenor asserts that the plaintiff is "unemployed and financially dependent and reliant" on his father, that the plaintiff-intervenor and his family "have foreseeably suffered a loss of society and companionship with the [p]laintiff[,]" that the plaintiff-intervenor "has foreseeably incurred irreparable harm as a result of his loss of consortium, including, without limitation, economic and emotional harm[,]" and that the defendant is liable as the entity responsible for injuring his son.  (Id. at ¶¶ 196-97, 200-01).

---

[2] The plaintiff-intervenor includes extensive allegations of wrongdoing on the part of Judge Moreno, who is not a party in this case. (See Docket No. 45-1 at ¶¶ 58-103, 150-165).

In Count II of his proposed complaint, the plaintiff-intervenor asserts a claim for tortious interference with contractual relations. (Docket No. 45-1 at ¶¶ 202-211). The basis of this claim is the plaintiff-intervenor's alleged "contractual agreement with the University of Miami" to pay for the plaintiff's legal education. (Id. at ¶ 203). The plaintiff-intervenor asserts that the defendant "substantially frustrated the purpose of the agreement between the [p]laintiff-[i]ntervenor and the University of Miami." (Id. at ¶ 206). As a result of the defendant's actions, the plaintiff became socially ostracized, his academic performance declined, and he suffered from "severe anxiety attacks, headaches, insomnia and the actual daily physical feelings of nausea." (Id. at ¶¶ 170). Ultimately, the plaintiff was unable to continue his studies at the University of Miami and returned home to Boston. (Id. at ¶¶ 171, 177). As a result, and because the plaintiff-intervenor asserts that the defendant knew he was paying the plaintiff's tuition, the plaintiff-intervenor claims that the defendant's actions foreseeably prevented him from receiving "the benefit of [his] bargain" with the University of Miami. (Id. at ¶¶ 204, 210-11).

The plaintiff-intervenor seeks essentially identical remedies to the plaintiff. (Compare Docket No. 1-3 at 23; with Docket No. 45-1 at 45-46). Specifically, both the plaintiff and the plaintiff-intervenor seek a mandatory injunction to remove the subject article, declaratory relief against the defendant, and damages. (See Docket No. 1-3 at 23; Docket No. 45-1 at 45-46).

Additional facts relevant to this court's analysis are provided below.

### III. ANALYSIS

The plaintiff-intervenor is seeking intervention as of right pursuant to Fed. R. Civ. P. 24(a) or, in the alternative, by permission of the court pursuant to Fed. R. Civ. P. 24(b). The defendant opposes intervention under either provision.

### A. Intervention as of Right

Under Fed. R. Civ. P. 24(a), relevant to this case,

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). To meet the standard for intervention as of right, the proposed intervenor

> must demonstrate that: (i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest.

Ungar v. Arafat, 634 F.3d 46, 50 (1st Cir. 2011). The "failure to satisfy any one of [the factors] defeats intervention as of right." Id. at 51. A court must approach the four-factor test "holistic[ally]" and keep "a commonsense view of the overall litigation." Pub. Serv. Co. of New Hampshire v. Patch, 136 F.3d 197, 204 (1st Cir. 1998). As detailed herein, the plaintiff-intervenor fails to satisfy all of these elements.

#### 1. The Motion is Not Timely

No bright line rule exists for determining timeliness, rather, "the timeliness inquiry centers on how diligently the putative intervenor has acted once he has received actual or constructive notice of the impending threat" to his rights. R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 8 (1st Cir. 2009) (noting that "the district court's discretion is

appreciable" when deciding if intervention is timely). The timeliness inquiry looks to three factors:[3]

> 1) the length of time the intervenor knew her interest was imperiled; 2) the foreseeable prejudice to the existing parties if intervention is granted, or to the intervenor if it is denied; and 3) any "idiosyncratic circumstances" which weigh for or against intervention.

Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008).

The first factor in the timeliness test weighs against the plaintiff-intervenor. A proposed intervenor must act "promptly after [he] obtains actual or constructive notice that a pending case threatens to jeopardize his rights." R & G Mortg., 584 F.3d at 8 and cases cited. While "there are no ironclad rules" about how long a delay is acceptable, the court must assess whether the putative intervenor has acted diligently. Id. Here, the plaintiff-intervenor, the plaintiff's father and an attorney, did not file the motion to intervene until four months after the case was filed, and he does not argue that he was unaware of the case or the implication of the case on his rights. An unexcused delay of four months in the instant case is not "prompt." See id. at 8-9 (affirming a district court's ruling that a two-and-a-half-month delay was "inexcusable" and was "well within" the district "court's discretion" to deny as untimely); Greenblatt, 964 F.2d at 1231 ("We find the [proposed intervenor's] failure to act for over three months, though armed with full knowledge, to be inexpiable.").

---

[3] The First Circuit traditionally used a four factor test which considered the foreseeable prejudice to existing parties and the foreseeable prejudice to the applicant separately, while recent First Circuit opinions have considered these as a single factor and, therefore, purport to apply a three factor test. Compare Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008); with Banco Popular de Puerto Rico v. Greenblatt, 964 F.2d 1227, 1231 (1st Cir. 1992). The change makes no substantive difference.

The plaintiff-intervenor offers two reasons to explain the delay, neither of which is persuasive. First, he contends that he

> expected that the Defendants would enter into an appropriate settlement and timely resolution prior to the date hereof so as to prevent further harm to the Plaintiff.

(Docket No. 46 at 4). The plaintiff-intervenor's hope that this case would quickly settle does not excuse a four-month delay, especially since there is no indication that he would have been involved in such a settlement as to protect his alleged rights. See In re Efron, 746 F.3d 30, 36 (1st Cir. 2014) (fact that the potential intervenor considered the case frivolous, or that settlement was a possibility, does not excuse delay in seeking to intervene); Narragansett Indian Tribe v. Ribo, Inc., 868 F.2d 5, 7 (1st Cir. 1989) (holding that the proposed intervenor's belief that the "lawsuit was frivolous" did not excuse the delay in filing). Second, the plaintiff-intervenor argues his motion is timely because "[u]ntil a proposed plaintiff-intervenor's rights are somehow 'jeopardized' for the first time, . . . the intervenor is under no obligation to sue." (Docket No. 78 at 18). This is not the correct standard. "Parties having knowledge of the pendency of litigation which may affect their interests sit idle at their peril." Narragansett, 868 F.2d at 7. Proposed intervenors cannot sit by and expect to be able to jump into ongoing litigation whenever they think it appropriate. If the plaintiff-intervenor's interests were implicated by his son's litigation, he was obligated to diligently move to protect them. He failed to do so and the first prong of the timeliness test weighs in favor of finding that the motion was untimely.

The second prong of the timeliness test, "the foreseeable prejudice to the existing parties if intervention is granted, or to the intervenor if [intervention] is denied," also argues

against intervention.  Geiger, 521 F.3d at 65.  By the time plaintiff-intervenor moved to intervene, the parties had fully briefed and argued plaintiff's motion to remand, and the defendant had filed a motion to dismiss (which is now ripe for decision).  By his 62 page proposed complaint, plaintiff-intervenor adds a large number of allegations of wrongdoing on the part of Judge Moreno, who is not a party to the pending litigation.  See supra note 2.  The defendant would be prejudiced by this late addition to the case if it was forced to address extraneous issues and allegations.  The requirement that motions to intervene be filed in a timely manner "is to prevent last minute disruptions of painstaking work by the parties and the court."  Culbreath v. Dukakis, 630 F.2d 15, 22 (1st Cir. 1980) (citation omitted).  See also United Nuclear Corp. v. Cannon, 696 F.2d 141, 143 (1st Cir. 1982) (finding prejudice to the existing parties where the delayed intervention could cause substantial delay and threaten the work of the parties in resolving the case).  The delay and additional briefing caused by a belated intervention further compels the conclusion that the motion to intervene is untimely.

The plaintiff-intervenor is also not likely to suffer any prejudice if denied the chance to intervene because, as discussed below, the plaintiff adequately represents the plaintiff-intervenor's interest.  See id. (finding that because the proposed intervenors are adequately represented, they likely face no prejudice if not allowed to intervene).  Further, the plaintiff-intervenor acknowledges that if he is not permitted to intervene he could "simply re-file a new action in this Court" to adjudicate his rights.  (Docket No. 46 at 2).  Thus, an assessment of the potential prejudice to the parties weighs in favor of denying the motion to intervene.

The third prong of the timeliness test requires a court to consider any unusual circumstances.  Here, neither party address this prong.  However, the court notes that this case

has a related case that was filed by the plaintiff in 2018, which also should have alerted the plaintiff-intervenor of the need to protect his alleged interests. See Mullane v. Breaking Media, Inc. et al., Civ. Action No. 18-cv-12618-PBS, 2020 WL 58455 (D. Mass. Jan. 6, 2020). This fact further compels the conclusion that the motion to intervene, filed in September 2019, was untimely.

In sum, this court finds that the motion to intervene was not timely. For this reason alone, the motion to intervene as of right should be denied. For completeness, however, the court will address the other elements.

### 2. The Plaintiff-Intervenor's Alleged Interest in the Action

To satisfy the second element of intervention as of right, a proposed intervenor must show he "has an interest relating to the property or transaction that forms the foundation of the ongoing action[.]" Ungar, 634 F.3d at 50. To form a viable interest, "'the intervenor's claims must bear a sufficiently close relationship to the dispute between the original litigants' and that 'the interest must be direct, not contingent'" or speculative. Conservation Law Found. of New England, Inc. v. Mosbacher, 966 F.2d 39, 42 (1st Cir. 1992) (quoting Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 638 (1st Cir. 1989); Ungar, 634 F.3d at 51-52.

The plaintiff-intervenor has proposed to state a claim for tortious interference with his contractual arrangement with the University of Miami. That claim raises matters that are not at issue in the pending litigation. Similarly, the plaintiff-intervenor's proposed loss of consortium claim, while predicated on proof of a tortious act that caused his son's injury, is a separate claim. See Tauriac v. Polaroid Corp., 716 F. Supp. 672, 673 (D. Mass. 1989) ("In Massachusetts, a consortium claim may be brought only when the claimant's spouse has a valid tort claim.");

Mass. Gen. Laws ch. 231, § 85X ("the parents . . . shall have a cause of action . . . against any person who is legally responsible for causing" serious injury to the child.). As the plaintiff-intervenor acknowledges, "[w]hile the underlying facts supporting the respective claims are of course those that basically arise out of the same series of events, the claims and damages resulting therefrom of the Plaintiff-Intervenor are separate and distinct from the claims and damages incurred by the Plaintiff." (Docket No. 46 at 8). Thus, the plaintiff-intervenor's alleged interest in the underlying transaction does not compel the right of intervention.

### 3. The Protection of the Proposed Plaintiff-Intervenor's Claims

A proposed intervenor must demonstrate "the disposition of the action threatens to impair or impede its ability to protect this interest[.]" Ungar, 634 F.3d at 50. The plaintiff-intervenor argues that his interests "would be adversely affected" if the court denies intervention because if the court decides for the defendant "this would obviously impact the Plaintiff-Intervenor's ability to recover in any subsequent litigation in an independent action." (Docket No. 46 at 7 (internal quotations omitted)). While this may be true, it is only because the plaintiff-intervenor's claims are dependent on his son's claims being successful. The plaintiff's claims remain his own, and the plaintiff-intervenor's claims remain his own. See Morgan v. Lalumiere, 22 Mass. App. Ct. 262, 271, 493 N.E.2d 206, 212 (1986) ("A loss of consortium or parental society claim in Massachusetts is viewed as a separate and distinct cause of action, independent of the claim of the injured spouse or parent. . . . "). The fact that the plaintiff-intervenor believes that he can more successfully present his son's claims might be relevant to his serving as his son's attorney – it does not give him the right to intervene. There is no threat to the plaintiff-intervenor's ability to protect his interests.

**4. The Plaintiff-Intervenor is Adequately Represented**

To meet the fourth prong of intervention as of right, a proposed intervenor must demonstrate "no existing party adequately represents its interest." Ungar, 634 F.3d at 50. Inadequate representation "can be satisfied by showing 'that representation of [the] interest *may* be inadequate.'" Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 807 F.3d 472, 475 (1st Cir. 2015) (quoting Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n. 10, 92 S. Ct. 630, 636 n. 10, 30 L. Ed. 2d 686 (1972) (emphasis added)). Generally, a proposed intervenor "need only make a 'minimal' showing that the representation afforded by a named party would prove inadequate." B. Fernandez & HNOS. v. Kellogg USA, Inc., 440 F.3d 541, 545 (1st Cir. 2006) (citation omitted). However, when "the intervenor's ultimate objective matches that of the named party, a rebuttable presumption of adequate representation applies." Id. at 546; see also Daggett v. Comm'n on Gov't Ethics & Election Practices, 172 F.3d 104, 111 (1st Cir. 1999) ("[A]dequate representation is presumed where the goals of the applicants are the same as those of the plaintiff or defendant[.]"). To rebut this presumption, an intervenor "need only offer 'an adequate explanation as to why' [the intervenor] is not sufficiently represented by the named party." Kellogg USA, Inc., 440 F.3d at 546 (quoting Maine v. Dir., U.S. Fish and Wildlife Serv., 262 F.3d 13, 19 (1st Cir. 2001)). See Daggett, 172 F.3d at 112 (explaining that "a refusal to present obvious arguments could be so extreme as to justify a finding that representation by the existing party was inadequate[]"); Moosehead Sanitary Dist. v. S.G. Phillips Corp., 610 F.2d 49, 54 (1st Cir. 1979) (finding that "adversity of interest, collusion, or nonfeasance[]" rebut the presumption).

Here, the plaintiff-intervenor's ultimate goals, to recover damages and for the court to issue a "mandatory injunction ordering Defendant[] . . . to remove the subject defamatory article[,]" are identical to the plaintiff's objectives. (<u>Compare</u> Docket No. 45-1 at 46; <u>with</u> Docket No. 1-3 at 23).  Similarly, to the extent that the plaintiff-intervenor's claims are dependent on the success of the plaintiff's claims, they share the same goal.  Therefore, there is a presumption that the plaintiff adequately represents the plaintiff-intervenor's interests.

The plaintiff-intervenor has not offered an adequate explanation to rebut this presumption, arguing, instead, that he might be more successful in persuading the court than the plaintiff.  As he asserts:

> in light of the Court's consistent rulings against "the pro se Plaintiff" in these related companion cases- including denying him even limited jurisdictional discovery. So, to state that Plaintiff cannot "adequately represent" the interests of the Plaintiff-Intervenor in this matter is indeed that of engaging in understatement- certainly a reasonable conclusion based upon the history and the timing involved for these proceedings to advance as they have to date.

(Docket No. 46 at 8-9)(footnotes omitted)).  (<u>See also</u> Docket No. 78 at 16 n.8).  This argument fails for the obvious reason that losing is not necessarily indicative of incompetence, inadequacy, or nonfeasance.  At oral arguments before this court, the plaintiff-intervenor did not offer any argument that he would seek to raise that the plaintiff has not previously raised.  Thus, although the burden is minimal, the plaintiff-intervenor has not shown the court that his interests may not be adequately represented by the plaintiff.

Because "failure to satisfy any one of [the four factors] defeats intervention as of right[,]" Ungar, 634 F.3d at 51, the plaintiff-intervenor's motion cannot meet the standard necessary to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2). [4]

**B.  Permissive Intervention**

Of relevance here, under Fed. R. Civ. P. 24(b), "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(2).  "The discretion afforded to the district court under Rule 24, substantial in any event, is even broader when the issue is one of permissive intervention."  R & G Mortgage, 584 F.3d at 11.

"[W]hen a putative intervenor seeks both intervention as of right and permissive intervention, a finding of untimeliness with respect to the former normally applies to the latter."  Id.  See also  Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp., 120 F.3d 304, 320 (1st Cir. 1997) ("We are also mindful of the fact that the standards for timeliness are less strict for Rule 24(a) motions to intervene . . . than for such motions under Rule 24(b)[.]").  In addition, adequate representation weighs against permissive intervention.  See Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n, 197 F.3d 560, 568 (1st Cir. 1999)  Because the plaintiff-intervenor failed to prove timeliness under 24(a) and his interests are adequately represented by the plaintiff, this court recommends that the District Court decline to use its discretion to grant intervention under Rule 24(b).

---

[4] The defendant argues that the plaintiff-intervenor's motion should be denied as futile because "the proposed intervenor cannot hope to state a viable claim."  (Docket No. 50 at 4).  Whether the complaint states a claim will be addressed in connection with the defendant's pending motion to dismiss.

[14]

## IV. **CONCLUSION**

For the reasons detailed above, this court recommends to the District Judge to whom this case is assigned that the "Proposed Plaintiff-Intervenor's Motion to Intervene" (Docket No. 45) be **DENIED**.[5]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days after being served with this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).