UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

JONATHAN MULLANE,                    )
                                     )
                Plaintiff,           )
       v.                            )          CIVIL ACTION
                                     )          NO. 19-11496-PBS
PORTFOLIO MEDIA, INC.,               )
                                     )
                Defendant.           )

**REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION TO DISMISS**

February 28, 2020

DEIN, U.S.M.J.

## I.    INTRODUCTION

The *pro se* plaintiff, Jonathan Mullane ("Mullane"), brings this action against the

defendant, Portfolio Media ("Portfolio" or "Law360"), alleging that an article published by

Portfolio, "Judge Recuses Self, Scolds Law Student-Plaintiff," was defamatory.  Mullane, a law

student at the time of publication, was the plaintiff in a case pending before Judge Moreno in

the United States District Court, Southern District of Florida.  The article details a contentious

hearing before Judge Moreno, which followed a visit by the plaintiff to Judge Moreno's

chambers, and Judge Moreno's subsequent recusal from the plaintiff's case.

Mullane asserts eight claims against Portfolio: libel *per se*- original publication, libel *per*

*se*- republications, two violations of Mass. Gen. Laws ch. 93A § 9, public disclosure of private

facts, tortious interference with prospective economic relations, intentional infliction of

emotional distress, and violations of Mass. Gen. Laws ch. 214 § 1B and Art. XIV of the

Massachusetts Declaration of Rights.  Mullane is seeking an award of damages, attorney fees, declaratory relief, and an injunction ordering Portfolio to remove the allegedly defamatory article from the internet.

Portfolio argues that Mullane's claims must be dismissed because the article is protected by the Fair Report Privilege.  The Fair Report Privilege allows journalists to report on official actions in a fair and accurate manner without concern for liability.  Portfolio argues their article reporting on Judge Moreno's actions is protected by this privilege because a judicial hearing is an official action, and the article is a fair and accurate summary.  Portfolio argues further that Mullane's remaining claims must also be dismissed because they are dependent on a finding of defamation, which, because of the privilege, cannot be made.

Mullane argues it is premature to determine if the privilege applies.  Regardless, Mullane contends that the article is not protected by the privilege because the hearing and subsequent recusal was not of public concern.

For the reasons detailed below, this court concludes that the Fair Report Privilege applies, and that the article is not otherwise defamatory.  This court recommends to the District Judge to whom this case is assigned that "Defendant Portfolio Media Inc.'s Motion to Dismiss" (Docket No. 27) be **ALLOWED**.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### Scope of the Record

In ruling on a motion to dismiss, the court construes "the well-pleaded facts of the complaint in the light most favorable to the plaintiff[.]"  Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011).  In addition, the court may consider documents attached to or

incorporated into the complaint, and relevant public records.  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68 (1st Cir. 2014).  See also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (court ruling on a 12(b)(6) motion can consider "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to the plaintiffs' claims; or . . . documents sufficiently referred to in the complaint.").  Applying these principles to the instant case, unless otherwise indicated, the facts are derived from the Verified First Amended Complaint (Docket No. 1-3) ("FAC"),[1] the article at issue attached to the FAC (Id. at Ex. A), the transcript of the hearing which was the basis of the article (Docket No. 29-4) ("Tr."),[2] and pleadings in the Florida proceedings, including Plaintiff's Verified Motion for Recusal for Cause (Docket No. 29-5) ("Recusal Motion"), and Order Granting Plaintiff's Verified Motion for Recusal (Docket No. 29-6) ("Recusal Order").  Mullane does not contest the authenticity of any of these documents.

### The Hearing and Judge Moreno's Recusal

In March 2018, Mullane was a second-year law student at the University of Miami and an intern at the United States Attorney's Office ("USAO") in Miami.  (See FAC ¶¶ 8, 35, Ex. A; Recusal Motion at ¶ 2).  He was also the *pro se* plaintiff in a consumer credit case against Barclays Bank Delaware, pending in the Southern District of Florida before U.S. District Judge

---

[1] Portfolio cites to the Second Amended Complaint in its Motion to Dismiss.  (Docket No. 28 at 1; Docket No. 80 at 1).  However, Mullane's attempt to file a Second Amended Complaint to add a non-diverse defendant was denied. (Docket Nos. 66, 74).  Therefore, as Portfolio recognizes, the Motion to Dismiss will be read to relate to the First Amended Complaint.  (Docket No. 28 at 7 n. 4).

[2] Mullane attached the transcript to his complaint in a related case, Mullane v. Breaking Media, Inc., Civ. No. 18-12618-PBS (Docket No. 57 Ex. A), which was brought against the publisher of a different article about the same hearing.  The court allowed the defendant's motion to dismiss that complaint.  Mullane v. Breaking Media, Inc., Civ. No. 18-12618-PBS, 2020 WL 58455 (D. Mass. Jan. 6, 2020) (hereinafter "Breaking Media").

Federico Moreno.  (See FAC ¶¶ 13, 22, 46, Ex. A).  On March 23, 2018, Mullane visited the chambers of Judge Moreno in an attempt to ask the Judge's Moreno's clerk a question about the Barclays case.  (Recusal Motion at ¶¶ 5, 8-13).

Following the visit, on April 10, 2018, Judge Moreno held a hearing in the Barclays case.  (See Tr. at 1, 3).  At the hearing, Judge Moreno was angry about Mullane's visit to his chambers and accused Mullane of gaining access by representing that he was working for the USAO, despite coming to chambers on a private matter.  (Tr. at 5-6).  Mullane contends that Judge Moreno's version of what had transpired in his chambers was inaccurate.

On April 13, 2018 Mullane filed "Plaintiff's Verified Motion for Recusal for Cause" asking Judge Moreno to recuse himself from the Barclays matter.  (Docket No. 29-5).  Therein, Mullane asserted that on the day at issue he was at the courthouse, dressed as if he was going to the beach, "to inquire about obtaining the record from this Court in order to request a writ of mandamus from the 11th Circuit" and that he was directed to speak with Judge Moreno's clerk on the 13th floor of the Courthouse.  (Id. at ¶¶ 6-10).  Mullane further attested that he made it clear to the clerk in Judge Moreno's chambers that although he was employed by the USAO, he was visiting chambers in connection with a personal matter.  (Id. at ¶¶ 12, 14).  Moreover, Mullane stated in his Motion that given the fact that he was "'dressed for the beach,' no reasonable person could possibly conclude that a young man wearing yellow shorts and flip-flops was conducting official business on behalf of the U.S. Attorney's Office or the United States government."  (Id. at ¶ 16).  Mullane asserted that he "did not engage in any improper conduct whatsoever[,]" and that Judge Moreno had made "unfounded and scurrilous accusations" against him at the hearing.  (Id. at ¶¶ 4, 22).  According to Mullane, "[t]he Court's

[4]

threats, accusations, and personal slights were malicious, disrespectful, irrelevant to the case at bar, and unsupported by any credible evidence or testimony" as well as being "wholly devoid of any logical basis." (Id. at ¶ 39). Mullane requested that Judge Moreno recuse himself, and asserted that "unfounded and unsupported accusations by the Court against a *pro se* litigant — a student and layperson — do not instill confidence in the judiciary by the public, and in fact cause significant harm to the public interest vis-à-vis the perceived partiality of the Court." (Id. at ¶ 46).

Judge Moreno granted the motion and recused himself. (Docket No. 29-6). In his Order, Judge Moreno stated that he was, "troubled by the lack of truthfulness of a future member of the bar." (Id. at 1). Specifically, Judge Moreno stated that the USAO's attendance log showed Mullane had worked from 11:00 a.m. to 5:00 p.m. on the day in question, so the Court was unconvinced Mullane was dressed for the beach. (See id. at 1-2). He stated that he intended to ask that surveillance tapes of the building and chambers be reviewed to see what Mullane was wearing. (Id. at 2). Judge Moreno wrote the he had "set a hearing to strongly advise the Plaintiff that his reputation was more important than the case because he interned at the [USAO] and will be seeking admission to the Florida Bar." (Id.). Judge Moreno expressed his continued concern with Mullane's "lack of awareness of what ex-parte communications are and the importance of candor by litigants, particularly future lawyers[,]" and reserved the right to refer the matter to the Florida Bar, the University of Miami School of Law, and the United States Attorney "for any action they deem appropriate." (Id.).

**The "Law 360" Article**

On April 16, 2018, Portfolio published an article through its publication, Law 360, entitled "Judge Recuses Self, Scolds Law Student-Plaintiff." (FAC ¶¶ 12, 14). The article, reproduced below, describes the hearing and recusal.

Summary: U.S. District Judge Federico Moreno recused himself Monday from a law student's suit against Barclay's Bank Delaware over a credit card dispute, but not before he took a parting shot at the student and threatened to report him to the Florida Bar and the University of Miami School of Law for "lack of truthfulness" before the court.

Body: U.S. District Judge Federico Moreno recused himself Monday from a law student's suit against Barclays Bank Delaware over a credit card dispute, but not before he took a parting shot at the student and threatened to report him to the Florida Bar and the University of Miami School of Law for "lack of truthfulness" before the court.

The judge granted the recusal motion by Jonathan Mullane, a second-year law student who is representing himself in the matter, but said he would be pulling surveillance tape of the court for Friday, March 23, when Mullane allegedly visited the judge's clerk to inquire about getting a copy of the case record so he could request a writ of mandamus from the Eleventh Circuit.

Mullane says he wore a T-shirt, yellow shorts and flip-flops, and made clear to the clerk that he was there for the personal matter, namely his lawsuit against Barclays, and not in his capacity as an intern at the U.S. Attorney's Office for the Southern District of Florida. But the clerk understood that he was there representing the government, and Judge Moreno said that on the day in question, he worked at the U.S. attorney's office from 11 a.m. until 5 p.m., according to the office's attendance log.

Mullane said that at a hearing last week, Judge Moreno made "farfetched, irrational and patently false" accusations about what the judge called an improper meeting with his clerk and threatened to hold him in contempt of court and to report him to his bosses at the U.S. attorney's office.

"The undersigned judge continues to be concerned with the law student's lack of awareness of what ex-parte communications are and the importance of candor by litigants, particularly future lawyers," Judge Moreno said. "Because of these

[6]

concerns, the court will grant the plaintiff's motion to recuse. However, the court reserves the right upon further investigation to refer the matter to the Florida bar, the University of Miami School of Law, and the United States Attorney for any action they deem appropriate."

Mullane is suing Barclays over an alleged billing error that the bank refused to correct. He says that Barclays never responded to his demand letter, so he notified the bank in writing that he would invoke his right under the Fair Credit Billing Act to withhold payment until the error was corrected or resolved. He claims that Barclays then retaliated by reporting his account as delinquent to various credit agencies.

Mullane wanted to file a petition for a writ of mandamus with the Eleventh Circuit because Judge Moreno had not yet ruled on his motion for default judgment for Barclays' failure to respond to his complaint. The judge pointed out that the bank had filed a motion to dismiss, which tolled any other deadlines and was still pending.

In its motion to dismiss, Barclays says Mullane previously sued the bank in small claims court in Massachusetts over the same issue and lost. The decision has been appealed to the Massachusetts Supreme Judicial Court.

Mullane said he confirmed with a legal ethics professor at the University of Miami that there are no ethical issues with a pro se litigant asking a clerk procedural filing questions.

"The judge recused himself for the right reasons, and his recusal speaks for itself," Mullane said.

An attorney for Barclays did not respond to a request for comment.

Mullane is representing himself.

Barclays Bank Delaware is represented by . . . [.]

The case is Mullane v. Barclays Bank Delaware Inc., . . . in the U.S. District Court for the Southern District of Florida.

--Editing by . . . [.]

*Update: This story has been updated to add comments from Mullane.*

[7]

(FAC at Ex. A).  Mullane alleges that the article caused him to lose employment and "to incur

severe economic and emotional harm."  (Docket No. 1-3 at 13 ¶¶ 83, 85).

Additional facts will be provided below where appropriate.

### III.      ANALYSIS

#### A.  Standard of Review

In considering the merits of a motion to dismiss under Rule 12(b)(6) "[w]e proceed in

two steps: First, we 'isolate and ignore statements in the complaint that simply offer legal labels

and conclusions or merely rehash cause-of-action elements.'  Second, we take the facts of the

complaint as true, 'drawing all reasonable inferences in plaintiff's favor, and see if they

plausibly narrate a claim for relief.'"  Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d

711, 717 (1st Cir. 2014) (quoting Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55

(1st Cir. 2012)).  "'Plausible,' we have noted, 'means something more than merely possible.'"

Id. (quoting Schatz, 669 F.3d at 55).  "Engaging in this plausibility inquiry is 'a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense.'"

Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662,

679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)).  Applying these principles to the instant

case compels the conclusion that the defendant's Motion to Dismiss should be allowed.

#### B.  Libel and the Fair Report Privilege

#### Overview of the Parties' Arguments

Portfolio argues that the article is protected by the Fair Report Privilege because

everything in the Article comes from – and accurately reports on – proceedings
in Plaintiff's lawsuit against Barclays.  The April 10 hearing transcript, Plaintiff's

recusal motion, and Judge Moreno's recusal order leave no doubt about that. Plaintiff clearly disagrees with Judge Moreno's assessment of the situation and feels he was treated unjustly — and he has sued Judge Moreno over his behavior . . . but his quarrel is with Judge Moreno, not Portfolio Media.  The law provides that he may not hold Portfolio Media liable for reporting on what Judge Moreno said in court and in a written opinion, or what Plaintiff himself wrote in his recusal motion.

(Docket No. 28 at 10).  According to Portfolio, Mullane's "bald allegations of malice" are unsupported because Mullane does not identify anyone at Portfolio who even knew of Mullane prior to publication.  (Id. at 12).  Finally, Portfolio argues that the claim must fail because any implication or opinion is based on disclosed, undisputed facts.  (Id. at 13).

Mullane argues that the Fair Report Privilege cannot be invoked before discovery. (Docket No. 68 at 1).  Regardless, he contends that the Fair Report Privilege does not apply because a $1,600 civil credit card proceeding is not a matter of public concern.  (Id. at 4-5). Mullane also disputes the accuracy and fairness of the article and alleges that malice can be proven by Portfolio's refusal to remove the article from the internet.  (Id. at 8-13, 17-18). Mullane conceded at oral argument that if this court concludes that the Barclays hearing was a matter of public concern, then this case should also be dismissed, as was his related case of Breaking Media.  See supra note 2.

## Legal Standard

A party alleging libel must establish, "(1) that the defendant published a written statement; (2) of and concerning the plaintiff; that was both (3) defamatory, and (4) false; and (5) either caused economic loss, or is actionable without proof of economic loss."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations omitted).  In Massachusetts, "[t]he fair report privilege establishes a safe harbor [from libel claims] for those who report on statements

[9]

and actions so long as the statements or actions are official and so long as the report about

them is fair and accurate." Howell v. Enterprise Publishing Co., LLC, 455 Mass. 641, 651, 920

N.E.2d 1, 13 (2010). The Fair Report Privilege is "construed liberally and with an eye toward

disposing of cases at an early stage of litigation" to ensure that media agencies are not silenced

by the threat of litigation. Id. at 653-54, 920 N.E.2d at 15-16.

The privilege applies to official actions in the judicial branch "when justice is

'administered'" such as a "public hearing before a judge" or "proceedings and actions taken out

of the public view so long as they are official." Id. at 654, 656, 920 N.E.2d at 16-17 (citation

omitted). Reports of both official statements and official actions are covered. Id. at 657, 920

N.E.2d at 18. "Reports of official statements are covered by the privilege so long as the reports

fairly and accurately describe the statements, even though the statements themselves may

contain defamatory material, or inaccurately report on official actions in a defamatory way."

Id. at 657-58, 920 N.E.2d at 18.

> To qualify as "fair and accurate" reporting, an article need only give a "rough-
> and-ready summary" that was "substantially correct." [Yohe v. Nugent, 321 F.3d
> 35, 43 (1st Cir. 2003)]. Importantly, "accuracy" refers to "the factual correctness
> of the events reported and not to the truth of the events that actually
> transpired." Id. at 44. The Fair Report Privilege encompasses reports on judicial
> proceedings, even if the reports are not "in technically precise language." Ricci v.
> Venture Magazine, Inc., 574 F. Supp. 1563, 1567 (D. Mass. 1983); see also Sibley
> v. Holyoke Transcript-Telegram Publ'g Co., 461 N.E.2d 823, 826 (Mass. 1984).

Breaking Media, Inc., 2020 WL 58455, at *3. Any "[i]naccuracies . . . 'do not amount to falsity so

long as 'the substance, the gist, the sting, of the libelous charge be justified.'" Butcher v. Univ.

of Massachusetts, 483 Mass. 742, 757, 136 N.E.3d 719, 735 (2019) (citation omitted).

As noted above, "[a] textbook form of an official action or proceeding is a public hearing

before a judge[.]" Howell, 455 Mass. at 656, 920 N.E.2d at 17. The parties disagree as to

[10]

whether, in addition to applying to "official actions," the action must also be of a "matter of public concern" for the privilege to apply.  (See Docket No. 80 at 6).  The Restatement (Second) of Torts § 611 (1977), which codifies the privilege, provides as follows:

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgment of the occurrence reported.

Howell, 455 Mass. at 652, 920 N.E.2d at 14.  Portfolio contends that under the Restatement only "a meeting open to the public" must relate to "a matter of public concern" while Mullane argues that an "official action" must also relate to "a matter of public concern."  (Docket No. 68 at 2-5; Docket No. 80 at 6-7, n. 6).  But see Sibley v. Holyoke Transcript-Telegram Publ'g Co., 391 Mass. 468, 470-71, 461 N.E.2d 823, 825-26 (1984) ("qualified privilege to report fairly and accurately the subject matter of judicial proceedings" is not premised on fact that controversies between citizens "are of public concern" but, rather, because citizens should be able to insure that persons who administer justice "act under the sense of public responsibility").  The outcome of the instant case remains the same, even if the additional showing of "public concern" is required.

Matters of public concern are "matter[s] of political, social, or other concern to the community."  Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708 (1983).  Whether speech is protected is a matter of law as determined by the "content, form, and context of a given statement, as revealed by the whole record."  Id. at 147-148 & n.7, 103 S. Ct. at 1690; Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 761, 105 S. Ct. 2939, 2946, 86 L. Ed. 2d 593 (1985).  Content alone can sometimes determine if a matter is of public concern, eschewing the necessity of analyzing the form and context of the statement.

[11]

O'Connor v. Steeves, 994 F.2d 905, 913-914 (1st Cir. 1993).  "[I]t is sufficient that the speech

concern matters in which even a relatively small segment of the general public might be

interested."  Breaking Media, Inc., 2020 WL 58455, at *4 (quoting Levinsky's, Inc. v. Wal-Mart

Stores, Inc., 127 F.3d 122, 132 (1st Cir. 1997) (internal quotations omitted)).

    **C.  The Fair Report Privilege Applies**

    As an initial matter, Mullane contends that the application of the Fair Report Privilege

should not be determined at the motion to dismiss stage.  This court disagrees.  It is important

that defamation cases be resolved promptly and efficiently, since "allowing a trial to take place

in a meritless case would put an unjustified and serious damper on freedom of expression."

King v. Globe Newspaper Co., 400 Mass. 705, 708, 512 N.E.2d 241, 243 (1987) (internal

quotation and citation omitted).  Here, all the relevant facts are included in the complaint and

public records.  Whether the article is protected by the Fair Report Privilege "is a question of

law to be determined by the Court."  Milford Power Ltd. P'ship v. New England Power Co., 918

F. Supp. 471, 485 (D. Mass. 1996) (deciding whether the fair report privilege applies in context

of motion to dismiss).  There is no reason for further litigation.  See generally Breaking Media,

2020 WL 58455, at *1, 4 (deciding application of fair report privilege in connection with a

motion to dismiss).

    Judge Moreno's hearing and subsequent recusal are properly characterized as official

action in the context of the judiciary as Judge Moreno was acting in his capacity as a judge

when he held the hearing in open court and then recused himself from the case.  The article is

also fair and accurate as the article is a "rough-and-ready summary" of the hearing and recusal

that is "substantially correct."  Yohe, 321 F.3d at 43 (citation omitted); see also Butcher, 483

Mass. at 755, 136 N. E. 3d at 734 (applying the privilege where challenged statements in news article were "substantively identical" to statements made by official actors).  As detailed above, the article comports with the transcript of the hearing, Mullane's motion to recuse, and the Judge's recusal order.

Mullane alleges that the article contains "factually-false statement[s]."  However, "'accuracy' for fair report purposes refers only to the factual correctness of the events reported and not to the truth about the events that actually transpired."  Yohe, 321 F.3d at 44.  For example, Mullane challenges the articles accuracy because he contends it states that he wanted to file a writ of mandamus against the Judge and that he had requested a default.  (FAC at ¶¶ 20-22).  However, Judge Moreno made it clear this was his belief at the hearing.  (Docket No. 29-4 at 9, 12-13).  Mullane also contends that a person reading the article would understand that he had engaged in criminal behavior, but the article only summarized Judge Moreno's statements and Recusal Order.  (FAC at ¶¶ 65-67; Docket No. 29-6).  Mullane also takes exception to statements concerning what Judge Moreno's clerk believed, but again the article reflects what was said by the Judge during the hearing and in his Order.  (FAC at ¶ 43-44; Docket No. 29-4 at 15-16).  Finally, Mullane challenges the article's report that Judge Moreno "pointed out that the bank had filed a motion to dismiss, which tolled any other deadlines and was  still pending" on the grounds that it portrayed Mullane as incompetent and unfamiliar with the Rules of Civil Procedure.  (FAC at ¶¶ 24-25).  However, the article did accurately reflect statements made by Judge Moreno both at the hearing and in his Recusal Order. (Docket No 29-4 at 13; Docket No. 29-6 at 1 n.1).

Mullane also argues that the fair report privilege cannot apply because Portfolio acted with actual malice. (Docket No. 68 at 17). This argument must fail for several reasons. First of all, truthful defamatory statements concerning matters of public concern are not actionable even if the statement made was malicious. Shaari v. Harvard Student Agencies, Inc., 427 Mass. 129, 134, 681 N.E.2d 925, 929 (1998). As held in the related case, "the Article reported on a matter of public concern—a court proceeding. A contentious interaction between a federal judge and a law student can be 'fairly considered' as a matter of 'concern to the community.'" Breaking Media, 2020 WL 58455, at *5. This court agrees. The treatment of pro se litigants and a judge's decision to recuse himself is of the utmost concern to the impartial administration of justice. Mullane seems to concede this point in his Motion for Recusal when he argued that the, "unfounded and unsupported accusations by the Court against a pro se litigant- a student and layperson- do not install confidence in the judiciary by the public, and in fact cause significant harm to the public interest vis-à-vis the perceived partiality of the Court." (Docket No. 29-5 at 5 ¶ 46).[3] In addition, there are no allegations in the FAC that would support a finding that the article was published with actual malice. There is nothing from which a tryer of fact could infer that Portfolio harbored any ill-will toward Mullane.

For all these reasons, the Fair Report Privilege applies to the article, and all defamation claims must fail. Therefore, this court recommends to the District Judge to whom this case is

---

[3] In the related case, Breaking Media, the court next turned to the First Amendment as a source to protect the opinions put forth by the author of the article at issue in that case. However, in the instant case the article does not use inflammatory language and does not offer the author's opinions on the matter. Therefore, this court need not provide analysis of the First Amendment's application to this article.

assigned that the libel *per se*- original publications (Count I) and libel *per se*- republications (Count II) be dismissed.

**D.** **Remaining Claims**

    **1.** **Two Violations of Mass. Gen. Laws ch. 93A § 9 (Counts III and IV)**

Mullane contends that Portfolio's "acts and omissions vis-à-vis knowingly defaming [Mullane]…constitute unfair and deceptive trade practices in violation of Mass. Gen. Laws ch 93A § 9." (FAC at ¶ 127). The second count is based on Portfolio's refusal "to remove the defamatory and factually-false article from the internet- even after it was given actual notice of the inaccuracy and falsity of the said article." (Id. at ¶ 136). In the related case, the court found "Mullane's Chapter 93A claim must be dismissed, because 'where allegedly defamatory statements do not support a cause of action for defamation, they also do not support a cause of action under G.L. c. 93A.'" Mullane, 2020 WL 58455 at * 8 (citing Albright v. Morton, 321 F. Supp. 2d 130, 142 (D. Mass. 2004)). Here, as Portfolio's article was protected by the Fair Report Privilege it, "cannot form the basis for liability under Chapter 93A." Id.

    **2.** **Violation of Mass. Gen. Laws ch. 214 § 1B (Counts V & VIII)[4]**

Under Mass. Gen. Laws ch. 214 § 1B, "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." A liberal interpretation of Mullane's complaint and subsequent briefing allows that Mullane has two arguments under § 1B. First,

---

[4] In his opposition, Mullane clarifies that the "publication of private facts" claim, presumably the "public disclosure of private facts" claim (Count V) is based on Mass. Gen. Laws ch. 214 § 1B and not the common law. (Docket No. 68 at 19). Further, while Count VIII is entitled "violations of Mass. Gen. Laws ch. 214 § 1B and Art. XIV of the Massachusetts Declaration of Rights," Mullane does not argue a constitutional violation. (See Docket No. 68 at 19-21). Consequently, this court will limit the discussion to the alleged statutory violation.

Mullane contends that the publication of information about his employment at the USAO

constitutes the publication of private facts.  (See Docket No. 68 at 20).  Second, he claims that

the publication invaded his right to be left alone.  (Id.).  However, "[w]hen the subject matter of

the publicity is of public concern, . . . there is no invasion of privacy."  Ayash v. Dana-Farber

Cancer Inst., 443 Mass. 367, 382, 822 N.E.2d 667, 682 (2005) (citations omitted).  Here, the

court has already ruled that the hearing and subsequent recusal is a matter of public concern.

Therefore, Mullane's statutory privacy claims must necessarily fail.

### 3. Tortious Interference with Prospective Economic Relations (Count VI)

A party claiming tortious interference with prospective economic relations must

establish,

> (1) the existence of a contract or a business relationship which contemplated
> economic benefit; (2) the defendants' knowledge of the contract or business
> relationship; (3) the defendants' intentional interference with the contract or
> business relationship for an improper purpose or by improper means; and (4)
> damages.

Karter v. Pleasant View Gardens, Inc., 248 F. Supp. 3d 299, 314 (D. Mass. 2017) (citing Swanset

Dev. Corp. v. City of Taunton, 423 Mass. 390, 397, 668 N.E.2d 333, 338 (1996)).  "Improper

means" can include defamation.  Sindi v. El-Moslimany, 896 F.3d 1, 23-24 (1st Cir. 2018)

(citation omitted).

This claim must be dismissed for several reasons.  First of all, Mullane cannot establish

that Portfolio acted with an improper purpose or by improper means.  For all the reasons

detailed above, the article was not defamatory.  Furthermore, Mullane has not plausibly alleged

that Portfolio interfered in future employment contracts.  Mullane appears to argue that

because Portfolio knew Mullane was an intern at the U.S. Attorney's Office, there was a

probable future relationship with the United States and its agencies.  (Docket No. 68 at 21).

While legal interns hope that this statement is true, the law requires that the defendant know

of the future contract.  There is no plausible allegation set forth beyond a conclusory statement

that Portfolio knew Mullane had secured an internship with the SEC  (FAC ¶¶ 157-59), and

there are no allegations which would support a conclusion that Portfolio intentionally

interfered with any such position.

### 4. Intentional Infliction of Emotional Distress (Count VII)

Mullane also alleges intentional infliction of emotional distress but concedes that the

Fair Report Privilege would void such a claim.  (See Docket No. 68 at 21).  Mullane's "emotional

distress claim is premised on precisely the same facts as his defamation claim[.] . . . [Mullane]

cannot evade the protections of the fair report privilege merely by re-labeling his claim."  Yohe,

321 F.3d at 44 (citation omitted).  As the article is protected by the Fair Report Privilege,

Mullane's intentional infliction of emotion distress claim must also be dismissed.

### IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to

whom this case is assigned that "Defendant Portfolio Media Inc.'s Motion to Dismiss" (Docket

No. 27) be **ALLOWED**.[5]

---

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days after being served with this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140,

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).